Good morning, your honors. May it please the court. This is Michael Ackerman for the appellant Timothy Larios. And as your honors are aware, this is an appeal from an order granting summary judgment on a case where the district court found that the defendants violated Mr. Larios' constitutional rights by overseizing data from his cell phone, but then found that that seizure was subject to the qualified immunity, folding that because it was in the course of a workplace investigation, that it was reasonable for the officers to believe that they had a right to search the phone, which I believe under the circuit is your I guess you sort of have two lines of argument. One is they shouldn't have searched the phone at all. And then second of all, even if they did, they eventually exceeded the scope of what the proper search should have been without a warrant. Actually, I'm willing to concede that they had a right to do a limited search, which is, and quite honestly, if they had if they had just done what they were planning to do and just look through and found text messages between the confidential informant, you wouldn't be here today that that's your position. Well, it's even goes a step further because it wasn't this isn't a situation where they seized his phone. And they did this in the course of just a random event. In other words, they were talking to him. He's he's got his cell phone on him. They just asked him to turn over his phone. And he does so and then they search it. In this instance, you have the state of California, the California Highway Patrol issuing a memo to the officers who are searching the phone telling them limit the search, the five telephone numbers and just text and messages relating to those five telephone numbers. Before they ever get the phone. These officers are told directly, not that they can search the entire phone, but that they have to limit the search to these five telephone numbers. So they're they're starting off with the understanding that that's all they're going to be allowed to do. Larios, when he's ordered to go into the office in a letter, in which he says, you're going to turn over your phone and we are going to search for work product, because that's consistent with the general order 100.95. That if you use your personal cell phone during the course of work, you have to give over to the government your work product. Larios didn't have a problem doing that. He was willing to give the work product. He had a problem giving them his phone for the reasons we now know. But he agreed, okay, you get to take the work product. So Lennarty then takes the phone, and he goes with Officer DeRay to a hotel in Reading, and they're searching the phone. At that point in time, they know they're only supposed to be taking text relating to this witness. But when they find it's taking too long, they then decide we're going to download all of the data, and just to be clear, the reason that it took too long, they did have a plan in place to just extract text messages, or maybe phone calls as well, between those, you know, those five enumerated numbers, correct. And it just didn't work. Isn't that what ultimately happened? No, their initial device didn't work. So the initial device would have cabined the search to just those five. If the initial device had worked, you would have had a qualm. Right. But what they did was they started using the second device, and they were still just downloading the text and photos. And you don't have a problem with that either? No, because if they had limited it to that, then there wouldn't be a problem here today. But because of the sheer volume, there was too many for them to finish that night. Rather than keeping the phone overnight and making a search the next day just for what they were told to search for, they decided to shortcut the process. Let's just do it the easy way. We'll download everything. We'll then extract the data we want later. We'll give you back your cell phone. You're not going to know what we've done because we just give you back your cell phone. We then take the data that we've downloaded. We extract what we want. And then at some point in time in the future, we can delete what we don't want anymore from the computer. But at the point in time when they know that they know that's not within what they were supposed to do under their instructions, what Mr. Larios was told when his phone was taken and which under the CHP general order is beyond the scope of what's allowed. So can I add just a factual question? Is there evidence that they reviewed? I understand they downloaded it and that that is somewhat problematic. But is there evidence that they reviewed any messages after downloading it to the numbers that they were allowed to do? The only evidence is the testimony of Officer DeRay, where he says, I didn't do this. But the problem with that is that was resident on a laptop computer that was subsequently given away. And we could not make the search to determine whether that representation was true because that was given away before we even learned of the fact that this computer had been used. So on this record, there's no objective evidence. That the non work related material was ever reviewed by anyone. Correct. That's correct, because the evidence was destroyed. So we could not search. Going back to to the moment when your client turned over the phone and he consented to the search. I don't see anything in the record that put any limitations on that consent, but I may be misreading. There was a letter given to him. If you read, he didn't want to give the phone over, so his consent was coerced by the letter, but the letter that was given to him at the time and. Let me just find the record so your honor could find it, but he was handed a letter when he came into the office. Well, here's here's what I have from his deposition. Maybe maybe I'm taking it out of context and you can correct me, but he says, I reiterated the fact you don't need it. I have personal information on that was my lifeline to my children and I said, what do you want from it? He said work product. I said, I could show you a work product and he said, well, you'll have a chance to do that. But also said, I don't recall exactly. So it strikes me from the record. He didn't put any. He handed over the phone and he didn't put, except by implication, perhaps any limitations on the search. Is that right? Well, he did not say anything, but the letter that was a letter that was given to him to tell him to give the phone said that work product would be extracted. But what he was being told is, give us your phone. We are going to extract work product. What you're saying is he then had to say, you don't have the right. Yeah, clearly the record is he didn't want to hand over his phone at all. But he was told you had to do this or basically you're going to get terminated. So he turns over the phone and at that point in time, it's his belief based on the letter that's being given to him that it's going to be limited to just the work product. And that's what Officer Lennarty was told to search for. He was not told by anyone, Williams or anyone else, that he could search the entire phone. Well, I think I'm I don't know if my clock is correct or not. Now, you've got you got about seven minutes left. All right. So I'll give you a two minute warning. All right. Thank you, Your Honor. So as I read the cases, the question is, is whether there had to be precedent directly on point. You could tell an officer in this case that you you can't search a person's cell phone, whether it's a CHP officer or anyone else, without a warrant. And if it's in the course of a workplace investigation and it's their personal cell phone, that somehow may not fall within that rule, that you can't search a person's cell phone. And as I've indicated in all the cases that deal with workplace investigation, with the exception of Zimmerman and Lazar, all the cases involved searches of devices that had been supplied by the government to the employee were controlled by the government. And so, for example, in Vaughan, it was a pager that was supplied by the police department. So in this case, you have a personal cell phone. He also had the CHP cell phone. I mean, it is an interesting issue on a personal cell phone, but he seemed to he didn't stand by that and say, no, I'm not going to let you take it because this is my personal cell phone. So I sort of feel like that distinction has has gone away in this case because he he consented to the search. Then the question is, did the search go too broadly? And I mean, I'd be interested in your view. What basis do you have that just downloading the information to a laptop without reviewing it, without any evidence that anyone actually reviewed evidence, you know, the broad information that was downloaded constitutes a search in and of itself? Well, it's it's not necessarily a search. And this was the argument made by the defendants in this case is that by simply downloading the data, we've not violated its constitutional rights. That's wrong on the law, because the law is that you can't seize the data. You can't have an overseer of it, even if you never search it. Simply overseeing the data, taking what is what is the case, what is the clearly established law that you're even seize it? I mean, it does. Admittedly, it seems a little intuitive that that that you can't do that. But what what's the clearly established law that says that was a constitutional violation? I'm trying to find that case, your honor. It's the one where they go in and they take the guy's server from his office. I think he was the accountant and they took the entire server and downloaded the data. I believe it's a U.S. Supreme Court case, if I can just for a moment here. Where the court actually said, you don't actually even have to look at the data in order for this to be an overseer and a violation of the Constitution. That was in one of my two braids. Well, you can bring it up on on rebuttal, if I'll I'll say the rest for a rebuttal. OK. All right, thank you for your argument. We'll hear from Ms. Daly. Good morning, your honors. Kristen Daly, on behalf of Appellee Scott Lunardi, may it please be my pleasure to introduce you to our appellee, please, the court. And I'm glad that the scope of this appeal got somewhat clarified by counsel. The only appellee at issue here is Scott Lunardi. I know there was some confusion, I think, raised in the reply brief, particularly mentioning Kyle Foster. But Kyle Foster, in the original motion for summary judgment, counsel didn't really oppose that he had nothing to do with the search or the seizure. He had authorized the investigation. So that argument was never made, even in opposition to the motion for summary judgment. And it was not brought up in appeal. So I believe that was waived on appeal. With regard to Appellee Robert Foster. Can I just cut to the issue that, sorry to interrupt, but do you agree that when they download, when the officers downloaded the information to the computer, to the laptop, that constituted a seizure for purposes of the Fourth Amendment? We don't concede that. I don't believe that is our strongest argument. But as the argument was made in our brief, it didn't, in terms of, you know, it wasn't a separate search.  And the case law that analyzes seizures talks about the possessory interest of the person. And here, Officer Larios' possessory interest was not impacted anymore by the download or the creation of this temporary backup on iTunes of his phone. In fact, the making of that temporary backup lessened the invasiveness of the original search, seizure, and search of the phone because he got his phone back a whole day earlier. I think that wasn't the question. The question was, isn't that a seizure? And I think unquestionably it was a seizure, correct? Your argument is it's not an unconstitutional seizure. But I think Judge Nelson's question was, was it a seizure? I wouldn't concede that, again, that the analysis on the seizure goes to the possessory interest. They took the data. They took all the data. The data belonged to him. How is that not a seizure? Because it wasn't, it wasn't utilized. It wasn't searched. It was destroyed thereafter. Nothing was done with it. That might be the search part of it. As I understood your argument, and maybe this goes to your, you know, your position that it was a reasonable seizure, but that the possessory interest was no greater by downloading it. They had the phone in their hand. They had consent to hold the phone, to seize the phone in that sense. Yes. Which is an interesting question. I mean, I suppose it is the government's position that when he handed over the phone, he consented to a seizure of all information on the phone, but only a search of a portion of the phone. Would that, is that, is that the government's position here? I think that that is our position and a reasonable position. I don't think in this, I guess this goes to the qualified immunity argument more and the clearly established law part of it. If you look at the United States, the comprehensive drug testing case, and this is a, it is a criminal case, so I don't think it's on point with our cases, O'Connor and Kwan, which authorized the workplace misconduct investigation exception to the warrant requirement. But they have, there's a long quote in that case that talks about the downloading of electronic data and how over-seizure in that instance is inherent in the process of seizing electronic data. What that case also found was that it mattered who was conducting that additional, that over-seizure. Here, it was investigator DeRay, who is not a named defendant. So it was separate and apart from, from our, from our defendant, Scott Lunardi. And it also matters. I just want to back up. Your position is defendant Lunardi, who apparently is the only one that's at issue on appeal, was not engaged and cannot be held liable for the, for the seizure. He can only be held liable for the search. Is that your position? No, I'm not saying that he can't be liable for it. The district court found that he was connected enough to be able to be found liable for it. But I think when you're talking about the reasonableness and the clearly established part of it, if you look at the comprehensive drug testing case, it matters who did it. And there was a separation and, and, and it was officer investigator DeRay who said, look, this is, this is what we have to do. Because my programs that I brought with me today to extract those certain texts aren't working because of the condition of the phone. I can do it with the other tools at my office. So let's make this temporary backup and I can do it there. Yes. The comprehensive drug testing did not say it wasn't a seizure. It plainly said it was a seizure. Yes. The only question was whether, is in this case, whether it's a, it's an unreasonable use of the seizure, an unreasonable seizure, right? I mean, I just want to get your opinion that it wasn't a seizure. That, and we can move on from that. I, you know, I want to be blunt with you on that. I mean, I think, so, I mean, I don't, I don't think comprehensive drug testing helps you on that. Okay. Well, moving on then from, you know, I sat on the panel opinion on that. So I'm pretty familiar with that case. If you look at the reasonableness of the creation of the temporary backup, you know, the two elements that we look at there are whether it was justified at its inception. The inception was six or seven hours into this search of the phone. They're getting a call from Lunar, from Lario saying, hey, where's my phone? So, you know, at the moment, is this justified to make this temporary backup so that Officer Larios can get his phone back and they can conduct these specific searches in a different location? So that's the justified at its inception part. And then whether it's limited in scope. It was a temporary backup. They only extracted the text from those certain numbers. And then the only evidence that we have is that investigators deleted those. I want to be clear. When you say they only extracted, you're talking about the search that went on. The seizure was of everything, but the search that happened, they ultimately only extracted the five numbers. Is that? Yes. Yes. What is the evidence of how temporary this was? Because it seemed a little confusing and not entirely clear at what point. I mean, theoretically, they could have done the extraction the next day and then they could have deleted everything or at least everything that they didn't extract that would have been subject to those five numbers. They could have deleted it all the following day. Is that what happened or what does the evidence suggest? Investigator DeRay's deposition testimony was that he did not remember exactly when he deleted it off the second laptop. What happened was that he downloaded and made the temporary backup on one laptop. Then he transferred it to a separate laptop that had different tools on it to extract those texts. His testimony is that I believe it is that he deleted the first creation of the backup onto the original laptop. He deleted that immediately right after he put it onto the second laptop. Then his testimony is that he doesn't exactly remember when he deleted it off the second laptop, but that it is his custom and practice to do so right after he extracts what he needed. And did all of this, the downloading of the phone occurred after Mr. Larios had requested his phone back, correct? Yes, well, he called and asked when he was going to get it back. Yes. So isn't the implication of all that is that whatever consent he gave at the onset, he revoked when he asked for his phone back? I don't think that was an issue raised below, and I don't think that was certainly not how they saw it that way. He was asking. I'm just I'm just asking you. I know it wasn't reasonable. I don't see that that was a withdrawal of his consent. He never said, look, I'm not consenting to you searching my phone anymore. I want it back right now. He was calling to to find out when he was going to get it back because it was taking longer than they had originally said it would take. But there was never regarding consent. There was never consent given to have the officers download the entire scope of information on the cell phone to another laptop. Would you agree with that? I would agree with that. And that wasn't certainly wasn't what was contemplated at the beginning as the situation developed. When he called to ask them, you know, when I when Larry was called to ask when he was going to get his phone back, why didn't the officers? I mean, I know these are speculative answers, but why didn't the officers? Maybe the better way to ask it is, did the officers then have a duty to explain the situation, why they were having problems with it and ask for additional consent to download it with an understanding that, you know, we'll delete this? Well, I don't even the decision wasn't made at that point. Officer Larios had called three to four hours in and they said they were still you know, they were still extracting the text. I don't know exactly. And it's not clear from the record. It's not on the record is my understanding about the conversation and exactly what they said. Hey, we have we brought this tool to extract the text. It's not working because of the condition of the phone. So now we're having to scroll through and take a video of your tens of thousands of texts with confidential informant Mello. And that's why it's taking so long. I don't we don't know if that's what the conversation was. But it was it was three it was hours after that, that when they continued to scroll and take screenshots of the text. And I think after somebody had accidentally hit the call button and they realized they might be impacting the integrity of the information that they said, you know, look, we've got to find a better way for this. And that's when they made the decision to make the temporary backup. So I mean, one of the things I'm struggling with about this case is you're relying on an exception to the warrant requirement. And based on my understanding of this record, I'm not sure you could have ever even gotten a warrant to do the scope of things that were done here. So how is an exception to the warrant requirement going to get you somewhere where a warrant might not get you? Well, it wasn't a criminal matter, it was a workplace misconduct investigation that I believe the O'Connor case and the Kwan case clearly say that getting a warrant in this type of situation is not practical. So I don't think I don't understand that, but just assume that that that was a possibility, a different avenue for the situation of getting a warrant. If the established law based on wouldn't get you to where you've gotten in terms of having everything from that phone accessed and downloaded, how is this presumably more limited doctrine going to get you there? Well, I think it's speculative that they wouldn't be able to get a warrant in a criminal situation, particularly given the various criminal investigations that Officer Larios' conduct impacted. So what was the crime? What would have been the crime? I'm not a criminal attorney, but in terms of just his impact on the investigations, those criminal drug investigations that were going on with the criminal defendant there, Mello's boyfriend, and then him sharing information with confidential informant Mello regarding these federal criminal investigations. I imagine there's a crime in there somewhere. Turning then finally to the qualified immunity argument that ultimately the district court rested on, we would argue that, of course, it's not clearly established in terms of a workplace misconduct investigation where an employee has has voluntarily co-mingled their work life and their personal life. There's nothing out there that says that this was clearly established, and the burden here is on the appellant to show that the law was clearly established when the search happened in 2014. All we have then is Quan and O'Connor. There have been cases since then regarding over-seizure that are mentioned in our brief, and as counsel mentioned in the Sixth Circuit, the Zimmerman case and the appeal, the Lazar appeal from that case, they did find that there was, and that's a recent case, more recent, qualified immunity for the entire search of an officer's personal cell phone. Again, in that case, there's no issue about having a general order from his employer saying that you can do work on your personal phone, but if you do so, that is subject to search, and that is property of your employer. The cases that are out there show that the law was not clearly established in 2014. The case that counsel relies on, that appellant relies on most, is Riley, and as I think I've stated and we've argued, it's not applicable here because that was a criminal case. There wasn't a workplace misconduct exception. There was no issue about co-mingling your work and your personal life on the cell phone. I think that if you look at these two officers, and certainly only the appellee, Lunardi, and then investigator DeRay, in the situation they were in, it was not clearly established that they could keep the phone for 10 or 12 or 24 more hours and keep scrolling through and taking pictures of those texts, that that was constitutional, but then the creation of a temporary backup so that those very same texts could be extracted and then the rest of the information deleted, that that was not reasonable. There's nothing out there that would tell them that that was the case. I think if we go back to just looking at the situation as a whole, Officer Larios chose, he was given a CHP cell phone, a CINTIF cell phone, a task force cell phone, specifically so that he could communicate with his confidential informant. He chose not to use that work-provided cell phone just so that he could cover this illicit relationship that he had with her. When he chose to do that, he chose under the general order to subject his phone to search, and that commingling, we would argue, lessens the reasonableness, his expectation of privacy on his entire phone. I think the O'Connor case speaks to that, too, that when you bring your personal items into your office and then they're all seized pursuant to the workplace misconduct exception, you've consented to that by doing that commingling. The appellant consented to that by choosing to have these tens of thousands of texts with a confidential informant to cover up his relationship. Counsel, you're over your time, so I have to cut you off at this point. Thank you for your argument. Thank you. And we ask that the district court's decision be upheld. Thank you. All right. We'll hear rebuttal. Thank you. Thank you, Your Honors. I'm going to try to go through these quickly so that I don't go over my time. First, there was an argument made that DeRay was the one who made the decision to download the data. That is not consistent with the evidence. It was Officer Lenardi who was running the investigation. He brought the phone to DeRay. And if you read their deposition testimony, it was DeRay who asked, basically, Lenardi, is this what we should do? And Lenardi agreed. So this was not something that Lenardi was completely separated from, which is what the district court found. The other comment about if we had a warrant instead of the letter here, let's assume that a warrant had been issued to search the phone for those five phone numbers. And Lenardi then had that warrant in hand and went to Officer DeRay, and they started doing the search under the warrant. The law is that you can't go beyond the scope of the warrant to search for information. Well, I agree with you as to the search. I agree with you as to the search. The position I heard here, and I'd be interested in your response, is when there was consent to give the phone, there was a seizure of the entire phone at that time. So there was a consent to seizure of the entire phone, but there was only a consent to a search of the five phone numbers. The position is when they downloaded the entire phone, that was no more of a seizure than the consent had already been given to seize the entire phone. If there had been evidence that they'd exceeded the scope of the search, I think you'd have a better argument. But what's your point about the seizure? Why is this unconstitutional seizure beyond the scope of consent when they downloaded it to the computer? I don't know if you want me to address the consent issue first as part of that or the second part of the over seizure. The case that I was looking for, which is cited in my brief, is United States v. Canius. It's a Second Circuit case from 2014, 755 Fed 3rd 125, where the court held that you violated a person's Fourth Amendment rights by downloading and indefinitely retaining every file. But there was no consent in that case, right? Correct. So here you have consent. And just how does consent change the analysis here? So the consent that was given here expressly was, first of all, if you remember the conversation, they said, we want to download your work product from your phone. I'll help you. I'll give you that. No, give us your phone. And then he gives up the phone without conditioning it. The only implication that one could draw from that is he was consenting to them taking his work product. They did not say, we want to download all the data from his phone. I mean, clearly he consented to give them the phone. Otherwise, I mean, there's nothing that would have stopped him from saying, no way, you don't touch my phone. Well, I mean, it would have made this a more interesting case. But I mean, how are you suggesting that he didn't consent to a seizure of the entire phone? Well, when you say a seizure of the phone, he gave them the physical object. Yeah. He did not consent. He included all the information on it. And so, I mean, I'm just trying to suss out what did they do differently in the seizure. It seems like perhaps your best argument is, look, when you download it to something else, that's just that's extending beyond what the consent was given. But anyway. I know I'm beyond my time. The only point I'd make here is if we go back to the Riley case, the guy who was being arrested gave his phone to the police officers. He gave the phone to the police officers that need consent that they could download the data because he handed over his phone incident to an arrest. The answer was no. So simply giving somebody your phone, whether it be in the course of workplace investigation or criminal investigation, does not expressly consent to waive your right of privacy to the content of the entire phone. Otherwise, every time there's any kind of a traffic stop or anything else and you hand over your phone, you're consenting, in theory, to them searching the entire phone because you gave them a phone. Not to searching the seizure. But anyway. If I may just the argument that she made by using my phone in the workplace, I commingled the information and then by doing so, impliedly consented or waive my right of privacy to the entire phone makes no legal or common sense because hypothetically, in this case, Officer Larios could have taken files home from the office, which he was not supposed to do. Files relating to these criminal investigations, in theory. Had he done that and they were investigating that, would that have allowed him, allowed them, Officer Lenardi, in the course of this quote workplace investigation, to go into his house and search the entire house, every computer, server, everything else that's in the house because they're there looking for the files. Because the analogy here to me is, you know, you want these five phone numbers. You want data relating to Mello. You don't just seize the stuff relating to what you're searching for. You seize everything. And the court in Riley analogized the information on the cell phone being far more voluminous and in qualitative information, more in content than you would find in a typical person's home. So common sense would tell an officer, if I can't search this guy's home for anything I want and just make an unlimited search of everything he has there without a warrant, then I can't do that with a cell phone. So I'm well beyond my time. Thank you for your patience. Yeah. Thank you both for your arguments today. The case just argued will be submitted for decision and will be in recess for the morning. Thank you very much.
judges: Thomas, Nelson, Hunsaker